# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-1684V
UNPUBLISHED

| | |
|---|---|
| BARBARA LYTES-WILLIAMS,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: October 5, 2022<br><br>Special Processing Unit (SPU); Entitlement to Compensation; Table Injury; Decision Awarding Damages; Pain and Suffering; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*David John Carney*, Green & Schafle, LLC, Philadelphia, PA, for Petitioner.

*Felicia Langel,*[1] U.S. Department of Justice, Washington, DC, for Respondent.

### RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES[2]

On November 24, 2020, Barbara Lytes-Williams filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[3] (the "Vaccine Act"), alleging that she suffered a shoulder injury related to vaccine administration ("SIRVA"), as defined in the Vaccine Injury Table, after receiving an influenza ("flu") vaccine on October 22, 2019. Petition at 1, ¶¶ 3, 19. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

---

[1] Although Kyle Pozza is attorney of record, Felicia Langel appeared on behalf of Respondent at the expedited hearing.

[2] Although I have not formally designated this Decision for publication, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002, because it contains a reasoned explanation for my determination. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[3] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below, and after holding a brief hearing on entitlement and damages in this matter, I find that Petitioner is entitled to compensation, and I award damages in the amount **$60,000.00**, **representing her actual pain and suffering.**

### I.    Relevant Procedural History

More than one year after the case was assigned to SPU – on January 12, 2022 - the parties filed a joint status report indicating they had discussed Petitioner's. ECF Nos. 21, 23. Although Respondent requested additional supporting documentation, he emphasized that he would not provide any further response to Petitioner's demand until the medical review had been completed. ECF No. 23.

On March 8, 2022, Respondent filed a status report indicating the case had been reviewed and he wished to engage in settlement discussions. ECF No. 26. Approximately two months later (on May 6, 2022), he responded to Petitioner's demand. ECF No. 29. The same day, Petitioner filed a status report indicating that, based upon Respondent's response, she did not believe an informal resolution could be reached. ECF No. 30. She therefore requested that I set a deadline for a motion for a ruling on the record regarding the issues of entitlement and damages. *Id.*

Over the subsequent four-month period, the parties provided their written arguments. Petitioner's Motion for Ruling on Record and Brief in Support of Damages ("Motion"), filed June 6, 2022, ECF No. 31; Exhibit 10, filed June 6, 2022, ECF No 32 (Petitioner's supplemental declaration); Respondent's Rule 4(c) Report, Response to Motion ("Response"), filed Sept. 1, 2022, ECF Nos. 37-38 (filed twice using differing CM/ECF events); Petitioner's Reply in Support of Motion ("Reply"), filed Sept. 12, 2022, ECF No. 40.

I proposed this case for an expedited hearing on September 30, 2022, at which time I would decide the disputed issues based on all evidence filed to date and any oral argument from counsel. *See* Informal Remark, dated Sept. 6, 2022. The parties agreed, and the expedited "Motions Day" hearing took place as scheduled. Minute Entry dated Sept. 30, 2022.[4] During the hearing, I orally ruled on Petitioner's entitlement to compensation, and then made an oral damages determination. This Decision memorializes those findings and determinations.

---

[4] As of the date of this Decision, the transcript of the September 30, 2022 Motions Day hearing has not been filed, but my oral ruling is incorporated by reference herein.

### II.     Factual Findings and Ruling on Entitlement

#### A. Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding his claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Hum. Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Hum. Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Hum. Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[5] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

---

[5] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* Section 11(c)(1)(A)(B)(D)(E).

Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10) (2017).

## B. Factual Finding Regarding QAI Criteria for Table SIRVA

The Table requirements for SIRVA that Respondent contests are the second and third criteria - whether the onset of Petitioner's pain occurred within 48 hours of vaccination, and whether her pain and reduced range of motion ("ROM") were limited to the left shoulder in which the vaccination was administered. Response at 6; *see* 42 C.F.R. § 100.3(c)(10)(ii) - (iii); *see also* 42 C.F.R. § 100.3(a)(XIV)(B) (requiring the first symptom or manifestation of onset within 48 hours of vaccination for a SIRVA injury following receipt of a flu vaccine). Regarding onset, Respondent argues that there does not appear to be a causal link between Petitioner's initial statements provided 30 days post-vaccination - that she was suffering left shoulder pain and received a flu vaccine on

October 22, 2019. Response at 6 (citing Exhibit 3 at 107-09). He insists that "[P]etitioner did not indicate the pain was present since within 48 hours of vaccination" and emphasizes there was "no shoulder assessment and no treatment rendered" at that November 21st appointment. Response at 6. Regarding the location of Petitioner's pain, he cites the medical record from a June 19, 2020 visit, when Petitioner reported that her pain radiated to her elbow. Response at 6 (citing Exhibit 5 at 43).

The medical records do not support Respondent's arguments. When Petitioner first mentioned her left shoulder pain - during a November 21st visit with her primary care provider ("PCP") for follow-up on her diabetes and hypertension, labs after fasting, and refills of her prescription medication - she directly linked her pain to the flu vaccine she received. The record indicates "Patient state[d] she *still* has pain in her left arm/shoulder that she got her flu shot 10/22/2019." Exhibit 3 at 107 (emphasis added). Although she did not specifically indicate that her pain began within 48 hours, this entry describes pain which has continued since vaccination, and allows for the conclusion that the pain began in the defined timeframe.

In addition, during later medical appointments Petitioner consistently described left shoulder pain which began within 48 hours of vaccination. Thus, at her initial physical therapy ("PT") evaluation, she reported left shoulder pain since her November 22nd vaccination – indicating her shoulder was swollen and painful the next day. Exhibit 4 at 7. When first seen by an orthopedist, she indicated her symptoms began "after receiving a flu shot in her left arm." Exhibit 5 at 5.

Despite the lack of any entry showing a shoulder examination was performed or treatment was prescribed during the initial November 21st PCP visit, the PT records show Petitioner was referred to PT by her PCP. Exhibit 4 at 7 (initial PT evaluation). Given that the PCP visit was for other reasons, this omission is not unreasonable and not sufficient to prevent Petitioner from prevailing on the issue of entitlement. Rather, as I explained at the expedited hearing, the lack of any substantive discussion or treatment on November 21st, along with the fact that Petitioner had not scheduled a visit specifically for her left shoulder pain, provides evidence that Petitioner's initial pain was likely mild. It is not, however, sufficient to counter Petitioner's statement - preserved in this record - that she was experiencing left shoulder pain related to her October vaccination.

Regarding the location of Petitioner's pain and limited ROM, Petitioner consistently report left shoulder pain. *E.g.,* Exhibit 5 at 65. The one entry Respondent cites – describing pain which began in her left shoulder but radiated to her elbow - does not prevent her from fulfilling this requirement.

5

Furthermore, the record contains sufficient evidence showing Petitioner has satisfied the other QAI criteria. *See* 42 C.F.R. § 100.3(c)(10)(i) & (iv). Respondent acknowledges that Petitioner's "medical history is noncontributory to her current condition." Response at 2. Additionally, when discussing the requirements for a Table SIRVA, he does not mention another condition or abnormality which would explain Petitioner's left shoulder pain. And a thorough review of the record in this case does not reveal either a prior or current condition which would prevent Petitioner from satisfying these requirements.

Thus, and as I stated during the expedited hearing, all elements of a Table SIRVA claim have been preponderantly established.

### C. Other Requirements for Entitlement

Because Petitioner has satisfied the requirements of a Table SIRVA, she need not prove causation. Section 11(c)(1)(C). However, she must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of her injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence which fulfills these additional requirements.

### III. Compensation to be Awarded

### A. Parties Arguments

In this case, Petitioner seeks only compensation for her pain and suffering. Maintaining that she continued to suffer shoulder pain more than two years post-vaccination and describing her pain as severe, Petitioner seeks $85,000.00. Motion at 19-23. She favorably compares the facts and circumstances in her case to those experienced by the petitioners in *Gentile*, *Dhanoa*, *Weber* who received $85,000.00 for their past pain and suffering and the petitioner in *Young* who received $100,000.00 for her past pain and suffering.[6] Motion at 17-19, 22. Additionally, the petitioners in *Gentile*, *Dhanoa,* and *Young* received an award for future pain and suffering. *Gentile*, 2020 WL 3618909, at *1, 14; *Dhanoa*, 2018 WL 1221922, at *7.

---

[6] *Gentile v. Sec'y of Health & Hum. Servs.,* No. 16-0980V, 2020 WL 3618909 (Fed. Cl. Spec. Mstr. June 5, 2020); *Dhanoa v. Sec'y of Health & Hum. Servs.,* No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018); *Weber v. Sec'y of Health & Hum. Servs.,* No. 17-0399V, 2019 WL 2521540 (Fed. Cl. Spec. Mstr. Apr. 9, 2019)*; Young v. Sec'y of Health & Hum. Servs.,* No. 15-1241V, 2019 WL 396981 (Fed. Cl. Spec. Mstr. Jan. 4, 2019).

In contrast, Respondent asserts that Petitioner should receive the lesser amount of $45,000.00 for her pain and suffering. Response at 10, 15. Describing Petitioner's injury as "mild and limited" (*id.* at 11), Respondent argues that her facts and circumstance more closely resemble those suffered by the petitioner in *Roth,* who received $58,000.00, and the petitioners in *Rayborn* and *Norton,* who received $55,000.00.[7] Response at 13-14. He also maintains that Petitioner's case "is factually distinguishable in important ways from the cases she cites in support of her claim." *Id.* at 11.

In her reply, Petitioner similarly argues that the cases cited by Respondent are not appropriate comparable cases. Reply at 9-11. She also cites additional cases which she maintains are similar – *Boyd* and *Accetta,* in which petitioners were awarded $80,000.00 and $95,00.00 for their past pain and suffering, respectively.[8] Reply at 13-15.

### B. Legal Standards for Pain and Suffering Awards

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections II and III of *Friberg v. Sec'y of Health & Hum. Servs.*, No. 19-1727V, 2022 WL 3152827 (Fed. Cl. Spec. Mstr. July 6, 2022).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[9]

---

[7] *Roth v. Sec'y of Health & Hum. Servs.,* No. 19-0944V, 2021 WL 4469920 (Fed. Cl. Spec. Mstr. Aug. 31, 2021); *Rayborn v. Sec'y of Health & Hum. Servs.,* No. 18-0226V, 2020 WL 5522948 (Fed. Cl. Spec. Mstr. Aug. 14, 2020); *Norton v. Sec'y of Health & Hum. Servs.,* No. 19-1432V, 2021 WL 4805231 (Fed. Cl. Spec. Mstr. Sept. 14, 2021).

[8] *Boyd v. Sec'y of Health & Hum. Servs.,* No. 19-1107V, 2021 WL 4165160 (Fed. Cl. Spec. Mstr. Aug. 12, 2021); *Accetta v. Sec'y of Health & Hum. Servs.,* No. 17-1731V, 2021 WL 1718202 (Fed. Cl. Spec. Mstr. Mar. 31, 2021).

[9] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

### C. Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: Petitioner's medical records, signed declarations,[10] filings, and all assertions made by the parties in written documents and at the expedited hearing held on September 30, 2022. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

Pursuant to my oral ruling on September 30, 2022 (which is fully adopted herein), **I find that $60,000.00 represents a fair and appropriate amount of compensation for Petitioner's pain and suffering.**

When making this determination, I have considered relevant facts such as the mildness of Petitioner's initial pain and limited ROM and lack of significant treatment. Although these factors did not prevent Petitioner from meeting the requirements of a Table SIRVA injury, it is evidence that her SIRVA injury was not notably severe. Additionally, the medical records do not support Petitioner's assertion that her vaccine-related left shoulder pain continued unabated for more than two years.

The medical records show Petitioner suffered a shoulder injury involving mild pain and limited ROM during the initial four months of her SIRVA injury. *See* Exhibit 4 at 3-11 (PT records from two sessions attended on December 26, 2019 and January 3, 2020) During this time, she attended only two PT sessions – maintaining she stopped due to financial concerns. *Id.* at 3 (February 4, 2020 PT discharge showing two sessions attended, four cancellations, and reason for discharge). At her initial PT evaluation, she reported her pain as ranging from zero at rest to eight out of ten at its worst. *Id.* at 7.

Approximately five months post-vaccination - in April 2020 - Petitioner was performing yard work when she suffered an injury to her right hand. Exhibit 9 at 6, 8. She then fell in the bathroom further aggravating her right hand and wrist pain. *Id.* at 6. Although Petitioner maintains her bathroom fall was due to her left shoulder condition, the medical records do not support this assertion. *Compare id. with* Exhibit 2 at ¶ 20 (first

---

[10] Rather than affidavits, the statements provided by Petitioner are declarations signed under penalty of perjury as required pursuant to 28 U.S.C.A. § 1746.

declaration) and Brief at 19. There is no mention of left shoulder difficulties in the medical records regarding treatment of Petitioner's right wrist and hand pain. *See* Exhibit 10.

In early May 2020 – more than five months post-vaccination - Petitioner attended her first appointment for left shoulder pain with an orthopedist. Exhibit 5 at 3-40. At that time, she reported more severe pain (seven out of ten), but she continued to exhibit only mild to moderate limitations in her ROM. *Id.* at 5-6. Petitioner was prescribed meloxicam and attended five PT sessions in June 2020. *Id.* at 6; Exhibit 6 (PT records). She last sought treatment for her left shoulder pain from the orthopedist in early August 2020 - approximately nine and a half months post-vaccination. Exhibit 5 at 62-86. At that visit, she reported improved pain - described as a dull ache. *Id.* at 64.

Although Petitioner asserts that she suffered a severe SIRVA injury which continued uninterrupted for more than two years, her characterization is not supported by the information contained in the medical records. When seen for abdominal pain in November 2020 – more than a year post-vaccination - Petitioner made no mention of any continued left shoulder pain. Exhibit 11 at 47-57. Although she reported left shoulder pain in late December 2020, Petitioner characterized it as a new condition – reporting the pain started two weeks earlier. *Id.* at 61. Petitioner did not mention her earlier vaccination and proposed that her pain may be linked to an issue with her left breast – noting she saw a dent in the left side. *Id.* In January 2022, Petitioner complained of abdominal tingling and left leg and lower back pain. *Id.* at 120. Her diagnoses included diabetic neuropathy and lumbar radiculopathy. *Id.* at 121. It was noted that she is taking meloxicam for her lumbar radiculopathy. *Id.*

The first time Petitioner mentioned left shoulder pain like what she suffered in 2019-2020 was in *late July 2022* – almost two years after her last orthopedic appointment in early August 2020. At that visit, she complained of the left shoulder pain, as well as leg and hip pain which she had reported in January 2022. Exhibit 11 at 147. It is important to note that this visit occurred only several months prior to the filing of the petition in this case.

As I stated during the Motions Day hearing, I see some similarities between the facts and circumstances in this case and the *Boyd* case proposed by Petitioner. However, the *Boyd* petitioner's pain and limited ROM were more severe, and that petitioner also suffered more consistent symptoms for a longer duration. *See Boyd,* 2021 WL 4165160, at *7-8. Instead, I find the *Roth* case proposed by Respondent to be the best comparable, and award an amount for pain and suffering slightly above the $58,000.00 conferred in that case. *See Roth,* 2021 WL 4469920, at *1, 4.

### IV.    Conclusion

For all the reasons discussed above and based on consideration of the entire record, **I find that Petitioner's left shoulder injury meets the definition for a Table SIRVA. Thus, causation is presumed, and Petitioner is entitled to compensation in this case. Furthermore, I find that $60,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[11]**

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $60,000.00, representing compensation for her actual pain and suffering in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id.*

This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[12]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[11] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required.  *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[12] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.